**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

FREIGHTCAR AMERICA, INC., a )
Delaware corporation, )
                                       )
                 Plaintiff, )
                                        )    Case No. 1:20-CV-07202
                 v. )
                                          )
DAVIS-FROST, INC., a Minnesota )
corporation, )
                                        )
              Defendant. )

**DEFENDANT DAVIS-FROST, INC.'S MEMORANDUM OF LAW IN**
**SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FILED BY**
**PLAINTIFF**

**INTRODUCTION**

    This dispute concerns a paint coating applied to steel railcars. Plaintiff FreightCar

America, Inc. ("FCA") alleges that paint coating purchased from Defendant Davis-Frost,

Inc. ("Davis-Frost") was defective and therefore violated a written warranty provided by

Davis-Frost. Davis-Frost requests that this Court dismiss the claims for lack of personal

jurisdiction because the conduct underlying this lawsuit did not occur in Illinois and

Davis-Frost has no connections with Illinois. In the alternative, Davis-Frost moves that

the Court transfer the matter to the Western District of Virginia pursuant to a forum-

selection clause in the written warranty.

**STATEMENT OF RELEVANT FACTS**

    Davis-Frost is a Minnesota corporation with its principal place of business in

Lynchburg, Virginia, where it produces industrial paint and coating products. (Compl.¶¶

2, 9; Decl. ¶ 2). FCA alleges that it is a Delaware corporation with its principal place of business in Chicago, Illinois. (Compl.¶ 1). FCA designs and produces freight railcars that require a paint coating to protect the railcars. (Compl.¶¶ 5, 8).

In May of 2017, Davis-Frost provided FCA with a written warranty titled "Protective Coatings New Railcar Warranty" ("Warranty"). (Compl. ¶ 15, Ex. B). The Warranty provided that Davis-Frost's coating titled "WATERTUFF Acrylic Coatings" would be free from defects for a 10-year period. (Compl. ¶ 15, Ex. B). The Warranty contains a forum-selection clause that designates venue "exclusively in the State of Virginia" for "any action . . . in connection with this warranty or the breach thereof." (Ex. B, ¶ 13).   Subsequently, in April 2019, FCA purchased multiple paint products from Davis-Frost, including the subject Mineral Brown paint. (Compl. ¶¶ 10, 12, Ex. A).

FCA placed the subject order for Mineral Brown paint by sending Davis-Frost a document titled "Standard Purchase Order" ("Purchase Order"). (Compl. ¶ 15). The Purchase Order is printed on FCA letterhead containing an Alabama address. (Ex. A). The shipping address is also an Alabama address. (Ex. A). The first page of the Purchase Order includes an Illinois address next to the words "Bill To:" and a second Illinois address that is unidentified. (Ex. A).

Davis-Frost manufactured the paint in Virginia. (Decl. ¶ 2). Davis-Frost shipped the paint to Alabama pursuant to the Purchase Order. (Compl. ¶ 16, Ex. A). FCA applied the paint to railcars at its Alabama facility. (Compl. ¶¶ 16-17). The alleged paint deficiencies were observed on railcars located in Alabama and Georgia. (Compl. ¶ 24).

FCA commenced this lawsuit, alleging that Davis-Frost breached the Warranty because the paint FCA purchased and applied to its railcars developed defects during the warranted time period. (Compl. ¶ 24). FCA's Complaint alleges that the dispute concerns a "transaction of business" in Illinois and the performance of a contract "substantially connected with Illinois," but does not provide facts to support these allegations. (Compl. ¶ 4). The only Illinois-related factual allegations in the Complaint are that FCA allegedly has its principal place of business in the state, that Davis-Frost allegedly markets and sells its products to Illinois consumers, and that Davis-Frost allegedly made "[m]aterial representations and other communications" about the sale, use, and subsequent defects of the paint to FCA employees located in Illinois. (Compl. ¶¶ 1, 42, 81, 83, 90).

## ARGUMENT

## I.  DISMISSAL IS WARRANTED BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER DAVIS-FROST.

Federal Rule of Procedure 12(b)(2) permits a party to move to dismiss a pleading for lack of personal jurisdiction. FCA bears the burden of establishing a prima facie showing of personal jurisdiction over Davis-Frost. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). When faced with a motion to dismiss for lack of personal jurisdiction over an out-of-state defendant, a court sitting in diversity considers the state's long-arm statute, if applicable, and due process considerations. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

### A.  The Illinois Long-arm Statute Does Not Confer Jurisdiction Over Davis-Frost.

In the Complaint, FCA appears to allege that the Court has personal jurisdiction over Davis-Frost because it (1) transacted business within the State and (2) it made or performed under a contract substantially connected with Illinois. (Compl. ¶ 4). *See* 735 ILC 5/2-209(a). When examining whether a defendant transacted business within the state or made or performed a contract within the state, the Court considers "who initiated the transaction, where the contract was entered into, and where the performance was to take place." *Osundairo v. Geragos*, 447 F.Supp.3d 727, 735 (N.D. Ill. 2020) (quotation omitted) (stating the court examines the same factors for each theory). Here, FCA initiated the transaction when it submitted a purchase order to Davis-Frost in Virginia for its coating products. (Decl. ¶ 3; Compl. ¶ 10, Ex. A). Davis-Frost accepted the Purchase Order in Virginia. (Decl. ¶ 3). FCA's Complaint does not allege that any performance under the Purchase Order occurred in Illinois. FCA has failed to allege facts that supports jurisdiction, and there are no facts alleged that support an allegation that the subject claims involve business conducted in Illinois or a contract made or performed in the state.

In addition to the enumerated list of forum-related contacts, the Illinois long-arm statute permits an Illinois court to exercise jurisdiction over an out-of-state defendant only if exercising jurisdiction conforms with due process under the Illinois and federal constitutions. 735 ILC 5/2-209(c); *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). "The Illinois long-arm statute requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018).

**B.     This Court's Exercise of Jurisdiction Over Davis-Frost Would Frustrate Due Process.**

FCA fails to allege whether this Court has general or specific personal jurisdiction. This is because the facts underlying this dispute lack any connection to Illinois, and thus, this Court lacks personal jurisdiction under either theory.

**1.     General jurisdiction**

The Court cannot exercise general personal jurisdiction over Davis-Frost. General personal jurisdiction exists when a defendant's "continuous" operations in a state are "so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." *Linkepic Inc. v. Vyasil, LLC*, 146 F.Supp.3d 943, 949 (N.D. Ill. 2015). "The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive," and "isolated or sporadic contacts" are inadequate. *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The focus is on whether a defendant's acts are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 138, 134 S. Ct. 117 (2014) (quotation omitted).

FCA baldly alleges that Davis-Frost "markets and sells" its products "to businesses and consumers located in Illinois" without alleging facts to support this contention. (Compl. ¶ 81). The allegation lacks detail about how Davis-Frost allegedly markets to Illinois consumers or the frequency of such marketing. FCA has not alleged

any facts demonstrating that Davis-Frost has continuous contacts with Illinois such that Davis-Frost is "at home" there.  Because Davis-Frost does not have "continuous" or "substantial" contacts with Illinois, the court's exercise of general personal jurisdiction over Davis-Frost would be improper.

### 2.    Specific jurisdiction

A court may exercise specific personal jurisdiction "when a defendant directs his activities at the forum state and the cause of action relates to those activities." *Linkepic Inc.*, 146 F.Supp.3d at 949 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174  (1985)). A defendant must have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 277 (2014) (quotation omitted). When considering a defendant's minimum contacts with a state, a court examines "the relationship among the defendant, the forum, and the litigation" and must determine if the "defendant's suit-related conduct creates[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 283–84. The "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285 (citing *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 319, 66 S. Ct. 154 (1945)). "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* at 284 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92, 100 S. Ct. 559 (1980)).

### i. Davis-Frost lacks minimum contacts with Illinois

FCA's Complaint alleges three facts in its attempt to link Davis-Frost to Illinois. First, FCA alleges that Davis-Frost's personnel communicated with *FCA personnel who were located* at FCA's Illinois headquarters about the sale and use of the paint, and the paint's deficiencies. (Compl. ¶ 42). But, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

Second, FCA baldy alleges that Davis-Frost "markets and sells industrial coatings and paints . . . to businesses and consumers located in Illinois," yet it does not discuss how Davis-Frost marketed nor allege the frequency of the alleged marketing activities. (Compl. ¶ 81). This is because Davis-Frost does not market its products in Illinois, and did not target FCA with marketing communications. (Decl. ¶ 5). By its own allegations, FCA stated it submitted the Purchase Order to Davis-Frost, and does not allege that Davis-Frost initiated the transaction. (Compl. ¶ 10). To the extent that FCA alleges that Davis-Frost marketed its product to FCA in Illinois, this is insufficient to establish specific personal jurisdiction. *See Clover Tech. Grp., LLC v. Oxford Aviation, Inc.*, 993 F.Supp.2d 872, 879 (N.D. Ill. 2013) (determining court lacked specific personal jurisdiction over Maine-based defendants who "made a sales pitch" over the phone to Illinois-headquartered plaintiff, sent market materials to plaintiff, and executed the contract while physically present in Illinois because defendants performed under the contract in Maine).

Third, FCA alleges that Davis-Frost "made the representations to FCA in Illinois regarding the Mineral Brown Paint." (Compl. ¶¶ 84, 90). But, a contract between the

parties is not sufficient to establish specific personal jurisdiction. When a state resident and out-of-state resident have a contractual relationship, the court measures whether the defendant had sufficient minimum contacts by considering "the parties' prior negotiations," "terms of the contract," and "the parties' actual course of dealing." *Clover Tech. Grp., LLC*, 993 F.Supp.2d at 879; *see Burger King Corp.*, 471 U.S. at 478–79, 105 S. Ct. at 2185 (stating that a contract exists cannot alone "establish sufficient minimum contacts" and that courts should consider "the parties' actual course of dealing"). Here, FCA's allegations around the making and performance of the contract all relate to Virginia and Alabama, not Illinois.

While there had been some past transactions where Davis-Frost shipped paint to FCA's now closed Illinois facility, FCA should not be allowed to rely on prior contacts with Illinois to establish specific personal jurisdiction, these prior contacts must be disregarded. The present lawsuit must "'arise out of' or 'be related to'" a defendant's minimum contacts in order to confer specific personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). The remaining allegations in the Complaint demonstrate that Davis-Frost does not have sufficient minimum contacts with Illinois. Davis-Frost does not have a place of business in Illinois. (Compl. ¶ 2; Decl. ¶ 4). It did not ship the subject paint to Illinois. The paint was applied to railcars in Alabama. The alleged defects were observed in Alabama and Georgia. Although FCA may prefer to litigate its grievances in Illinois, it has not shown that Davis-Frost has a "substantial connection" with, or has directed its contacts at, the state. *Walden*, 571 U.S. at 283–84.

### ii. Exercising jurisdiction would offend fair play and substantial justice

Requiring Davis-Frost to defend this suit in Illinois would frustrate due process considerations because its performance under the contract did not occur in Illinois. Davis-Frost did not conduct any activity in Illinois related to this lawsuit, and the disputed product never traveled into Illinois. Davis-Frost did not direct it contacts at Illinois and has not sought the benefit or protection of Illinois law. The lack of Illinois-related conduct underlying this lawsuit has left Davis-Frost without notice that it could be sued there. FCA bears the burden of establishing personal jurisdiction, and it has failed to do so. *N. Grain Mktg., LLC*, 743 F.3d at 491.

## II.  ALTERNATIVELY, THE COURT SHOULD ENFORCE THE FORUM-SELECTION CLAUSE AND TRANSFER THE CASE TO THE WESTERN DISTRICT OF VIRGINIA.

### A.  The Warranty Contains An Enforceable Forum-Selection Clause That Requires Exclusive Venue in Virginia.

#### 1. The forum-selection clause contains mandatory language and must be enforced.

Generally, forum-selection clauses are presumptively valid. *Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F.Supp.2d 901, 904 (N.D. Ill. 2013). If a clause contains mandatory language, the clause will be enforced. *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756 (7th Cir. 1992).

The Warranty's forum-selection and choice of law clause provides: "This Warranty and all rights and obligations hereunder shall be governed by the laws of the State of Virginia, without regard to its conflicts of law provisions. In the event of any action commenced by any party hereto in connection with this warranty or the breach

thereof, venue shall be exclusively in the State of Virginia." (Ex. B). The use of "any action" coupled with "shall" mandates application of the forum-selection clause to any action "in connection with" the Warranty. Courts have held that similar language is mandatory and enforceable. *See Paper Exp., Ltd.*, 972 F.2d at 756 (stating the phrases "shall" and "all disputes" is obligatory language and the provision must be enforced). The Western District of Virginia houses Davis-Frost's principal place of business, which makes it the appropriate venue under the clause. Notably, FCA has not challenged the validity of the Warranty or any of its provisions. *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 610 (7th Cir. 2006) (stating that a forum-selection clause will be enforced "like any other contractual provision" unless "it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract").  In fact, the Warranty is at the core of all of FCA's claims.

## 2. The forum-selection clause governs all of the claims in FCA's Complaint.

Courts construe forum-selection clauses broadly. *Am. Patriot Ins. Agency v. Mut. Risk Mgmt.*, 364 F.3d 884, 889 (7th Cir. 2004). The forum-selection clause pertains to "all rights and obligations hereunder" and "any action commenced by any party hereto in connection with this Warranty or the breach thereof[.]" Applying this language, each of FCA's five claims arise out of the Warranty and are bound by its forum-selection clause.

FCA concedes that the "Warranty is applicable to FCA's purchase and use of the [paint] on the Railcars." (Compl. ¶ 72). All of FCA's claims flow from the Warranty and therefore, are subject to its terms. FCA also alleges that the Warranty was agreed upon

first, and the Purchase Order followed thereafter. (Compl. ¶ 15). FCA's act of securing the Warranty before purchasing the paint further demonstrates that the Warranty governs FCA's purchase and use of the paint, which is the root of its claims.  A brief evaluation of each claim leads to the same conclusion.

First, Count IV (Breach of Express Warranty) alleges a breach of the Warranty itself, so it relates directly to the Warranty and is governed by its terms. Second, the allegations underlying both Counts II (Breach of the Implied Warranty of Fitness for a Particular Purpose) and III (Breach of the Implied Warranty of Merchantability) are rooted in the Warranty. Both Counts allege that Davis-Frost breached its representation that its paint would be free of defects, and the implied warranty claims of merchantability and fitness are mere subsets of the broad representation of the absence of defects set forth in the Warranty. Additionally, FCA cannot escape the forum-selection clause by alleging breaches of implied warranties. *See Am. Patriot Ins. Agency, Inc.*, 364 F.3d at 889 ("[T]he existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes."). These Counts relate to "rights and obligations" provided by the Warranty and are therefore bound by the forum-selection clause.

Third, Count I (Breach of Contract) alleges that Davis-Frost breached the warranty language in the Purchase Order. The General Conditions section of the Purchase Order contains  language that provides that Davis-Frost "expressly warrants" that its paint "will

be free from defect." (Ex. A, ¶ 4). Although Count I refers to the General Conditions of the Purchase Order, the body of allegations supporting this Count arise out of the Warranty. FCA pleaded that the "Warranty is applicable to FCA's purchase" of the paint, which would include the Purchase Order memorializing the transaction. (Compl. ¶ 72). Count I is closely related to the Warranty and is governed by its terms.

Lastly, Count V (a claim under the Illinois Consumer Fraud Claims Act) is also governed by the forum-selection clause. Count V alleges that Davis-Frost knew that its paint had problems but that Davis-Frost represented to FCA that the paint would be free from defects for ten years. (Compl. ¶ 87). FCA's allegations are based upon representations in the Warranty. Therefore, Count V must be governed by the forum-selection clause in the Warranty.

The parties agreed to the Warranty—and the forum-selection clause within it—before entering into an agreement via the Purchase Order. By agreeing to the Warranty, the parties accepted that any dispute related to the "rights and obligations" under the Warranty would be adjudicated in Virginia. The allegations underlying each count in the complaint are premised on the Warranty. Setting aside the forum-selection clause would thwart the parties' agreement.

**B.     Transfer is Appropriate Under 28 U.S.C. § 1404(a)**.

28 U.S.C. § 1404(a) permits transfer when a forum-selection clause mandates venue in another federal court. *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) ("[W]hen a forum-selection clause requires suit in a specific federal forum, the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)."

(quotation omitted)). "When a defendant files a § 1404(a) motion, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Const. Co., Inc.* v. *U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 50–51, 134 S. Ct. 568 (2013).

The court must disregard "plaintiff's choice of forum" and "the parties' private interests" and instead only consider whether the "interests of justice" warrant transfer or dismissal. *Atl. Marine Const. Co., Inc.*, 571 U.S. at 51. The interest-of-justice analysis examines three public-interest factors: (1) "docket congestion and likely speed to trial in the transferor and potential transferee forums;" (2) the court's familiarity with applicable law; and (3) "the respective desirability of resolving controversies in each locale and the relationship of each community to the controversy." *Hirst v. SkyWest, Inc.*, 405 F.Supp.3d 771, 775 (N.D. Ill. 2019). "[P]ublic-interest factors will rarely defeat a transfer motion." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 51. FCA bears the burden of demonstrating that the public-interest factors disfavor transfer. *Pomerantz v. Int'l Hotel Co. LLC*, 359 F.Supp.3d 570, 580 (N.D. Ill. 2019); *Atl. Marine Const. Co., Inc.*, 571 U.S. at 51.

When evaluating the first factor, courts consider the speed at which a case proceeds in the disputed venues. *Feather v. SSM Health Care*, 216 F.Supp.3d 934, 943 (S.D. Ill. 2016). In the Northern District of Illinois, a civil case requires an average of 39.3 months from filing to trial.[1] In the Western District of Virginia, it is 20 months. This

---

[1] *See* U.S. DIST. COURTS-NAT'L JUDICIAL CASELOAD PROFILE  (2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

factor weighs in favoring of enforcing the clause and transferring to the Western District of Virginia.

The second factor weighs in favor of transfer. Federal judges are familiar with applying the law of other states, and a federal judge in the Western District of Virginia would be able to apply Illinois law as it pertains to FCA's claim under the Illinois Consumer Fraud Act. In *Warwick v. Schneider Nat'l, Inc.*, the Northern District of Illinois rejected plaintiff's argument that its claims under the Illinois Wage Payment and Collection Act could not be transferred to a federal court in Wisconsin pursuant to a forum-selection clause. 2020 WL 5891407 *7 (N.D. Ill. 2020). The court concluded that this consideration did not inhibit transfer because "courts are often called upon to decide substantive legal questions based upon another state's laws." *Id.* (quotation omitted). Similarly, in *Kjaer Weis v. Kimsaprincess Inc.*, the Northern District of Illinois transferred plaintiff's claim under the Illinois Uniform Deceptive Trade Practices Act to the Central District of California at defendant's request. 296 F.Supp.3d 926, 936 (N.D. Ill. 2017). The court again reasoned that the California court was competent to hear plaintiff's claim because federal judges "routinely apply the law" of other states. *Id.*

Lastly, the court must consider the relationship of both locales to the controversy. "[O]nly an exceptional public-interest justification can displace a contractual choice of forum." *Mueller*, 880 F.3d at 893. Davis-Frost's principal place of business is in Virginia. Davis-Frost negotiated the agreements with FCA, manufactured the product at issue, and shipped the product from Virginia. FCA may have its principal place of business in Illinois but, the product was shipped to, and used in, FCA's facility Alabama.

Additionally, the forum-selection clause also contains a choice-of-law clause designating Virginia state law as the applicable law. The conduct underlying this lawsuit is more closely tied to Virginia. Therefore, this factor supports transfer to the Western District of Virginia.

### CONCLUSION

Defendant Davis-Frost, Inc. is not subject to personal jurisdiction in the Northern District of Illinois and venue is not proper in this Court. Defendant respectfully requests the Court to dismiss FreightCar America, Inc.'s Complaint pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, Davis-Frost requests that the Court transfer the action to the Western District of Virginia pursuant to the Warranty's forum-selection clause.

Dated:  February 12, 2021                    Respectfully submitted,

**LATHROP GPM LLP**

By:   s/Bryan E. Minier
   Bryan E. Minier (Ill #6275534)
    155 North Upper Wacker Drive
    Suite 3000
    Chicago, IL  60606-1787
    (312) 920-3300 – Telephone
    (312) 920-3301 – Facsimile
    Bryan.Minier@LathropGPM.com

   Charles K. Maier (PHV Admission Pending)
    500 IDS Center
    80 South Eighth Street
    Minneapolis, MN  55402
    (612) 632-3000 – Telephone
    (612) 632-4444 – Facsimile
    Charles.Maier@LathropGPM.com

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed electronically on February 12, 2021 with the Clerk of Court to be served by operation of the Court's electronic filing system upon all registered counsel of record.

s/ Bryan E. Minier

GP:4837-5999-5864